Bissell, P. J.,
dissenting.
I shall depart from the usual course pursued by the judges of appellate courts, and the course which has been uniformly pursued by this court in determining questions which occa *238 sion a review of decisions of the supreme court. It is unusual for more than one judge to file an opinion in a cause, at least in this country, though the practice prevails in England. I take this course in obedience to the very strong convictions which I entertain upon the general question which is presented. I know that I am not in harmony with one of the members of this court, and perhaps with neither of them in regard to the construction of the opinions which the supreme court has rendered since I first announced what I believe to be the true doctrine in such cases. The People v. Rio Grande County, 7 Colo. App. 229. There never would have been any embarrassment about the matter, and that opinion would have been followed in its general terms but for the possible doubt thrown on the accuracy of the conclusion by two decisions since rendered by the supreme court of the state which will be hereafter referred to. In what I may say about these decisions, and in the analysis which I shall make of them, I intend in no manner to attempt to overrule or depart from the law as therein declared. I do not want to be understood as assenting to them. In some respects I agree with them, in others I do not accept them. While this is true, I intend in no measure to depart from the law as there declared, contenting myself simply with this expression, and basing my ultimate acceptance on the statement, ita lex scripta est. While it is thus written by the tribunal having authority to declare the law, I am bound in the position which this court occupies to follow it, though in following it, I must withhold my individual and judicial assent to some of the law as it has expressed it. Largely, however, my dissent will be with reference to a matter which I believe is wholly obiter dicta, and wholly unnecessary to the result, although the argument may be illustrative of the doctrine laid down.
Proceeding with this case : this action was begun against the county and resulted in a judgment. It is quite evident from an inspection of the record, from an examination of the petition for mandamus, and from the arguments of counsel, *239 that the cause of action was sundry county warrants of which plaintiff was the owner. To the original suit there was no defense, that is, none which would abate the action, or if pleaded in bar would have been available to defeat it. The judgment being unpaid, the parties filed a petition for a mandamus to compel the county to levy taxes to pay it. This resulted in a judgment directing a peremptory writ to issue and specifying the tax which should be levied. From that judgment the county appealed, and the case came before this court for consideration. The court speaking by me, in the case of The Board of County Commissioners of Grand County v. The People, 8 Colo. App. 43, held that there had been a failure of proof with respect to the demand and refusal of the county to levy a tax, and the cause was sent back for further proceedings, though therein we made some suggestions with respect to what the lower court should do in its attempt to ascertain what levy ought to be made. The case went back, was again tried, the proof in this respect was somewhat supplemented, though otherwise it is in no different condition than when it was first before us for consideration.
The leading question discussed by counsel on the original hearing of this appeal, on the two arguments, and on the rehearing, is simply the one whether when a judgment is obtained against a county, mandamus may issue to compel the levy of taxes to pay it. This is the only question which counsel have discussed in their arguments, and the one on which they have principally relied in their briefs, and it is really the leading and fundamental one in the controversy, and the principal one which we are called on to determine. It is one, which being resolved in favor of the relator, entitles him to a mandamus to compel the levy of a tax which shall suffice to pay his judgment, should his allegation and proof ultimately be found sufficient. I have such very strong convictions in regard to this matter that I depart from the usual procedure in such cases and state my individual views in justice to those convictions, and to furnish so far as I can, material of greater or less value for the ultimate determination by the supreme *240 court of this very troublesome question. It seems to me to be a question which ought to he decided along broad lines with reference to the rights of creditors and the rights of counties, the collection of the securities holden by the creditor, and the enforcement of the obligations which counties may have assumed. As it seems to me these are not cases for technical construction in narrow ways, but that the one thing courts should attempt, if the legislation permits it, is to establish a construction which will compel counties to pay the debts which they have created, and enable the creditors to receive the moneys to which they are entitled and with which they originally parted, on the faith and strength of a county promise. The trouble is, as it has been in all new states, whep the counties were originally organized, they proceeded to make large public improvements, build bridges, construct roads, erect courthouses and indulge in other elaborate expenditures to carry on the county government, when there was not within the territorial limits property, personal or real, on which taxes could be laid to raise funds to pay these extraordinary expenditures. The result is that when the time of payment comes, the taxes are found onerous, and there is an effort by subsequent authorities to escape the obligations. It results in attempts at wholesale repudiation. I believe it to he the duty of the courts to construe liberally all statutes which provide remedies for the creditors, in order to afford ways for the collection of the promises of the county, and the enforcement of its obligations. This is my theory in regard to the rule by which such statutes should be construed, and the course which the courts ought to take in the construction of them. I do not believe that we should be astute to find ways or means to permit the counties to escape their obligations.
Proceeding: It has always been the policy of this state to permit the collection of judgments obtained against a county by compelling the levy of a tax. This is, however, outside the question as to whether parties have or have not a right to sue on a county warrant. It is the established rule that all *241 judgments are to be paid by taxation. It was so provided in the Laws of 1861, page 85, and in general terms it is, that a judgment rendered against any board of county commissioners shall be paid, but no execution shall issue, but it shall be paid by a levy of a tax, as other county charges, subject to a proviso. The law continued in this form down to 1887. In the Laws of 1887, page 241, the proviso was amended, permitting the board' of county commissioners to pay a judgment by a warrant. Of course this was upon the assumption that there was money in the treasury against which a warrant could be drawn, and the board could pay it by drawing a warrant for the purpose. There were no other changes in the law with respect to the collection of judgments of any significance until the act of 1887. Those laws have been heretofore cited by the court in other cases and most of them in the principal opinion. They have been construed in the decisions of this court already referred to, as well as in The People ex rel. v. Board of Commissioners of Rio Grande County, 11 Colo. App. 124; Beeney, Treasurer, v. Irwin, 6 Colo. App. 66; Vincent v. Board of County Commissioners of Hindsdale County, 12 Colo. App. 40.
Some of these cases do not directly pass on the question nor directly determine it, though they are on cognate questions. As already intimated in the 7th Colorado, the circuit court of appeals of this circuit has not entirely agreed with this court, but reached a different conclusion which was expressed in the Board of County Commissioners of Grand County v. King, 67 Fed. Rep. 202. The matter again came before them, and while it adhered to its decision, the court was not unanimous. Stryker v. The Board of County Commissioners, 77 Fed. Rep. 567. How far Judge Sanborn was influenced in his decision by the determination of this court, is not very easily ascertained from his dissenting opinion. He upholds in a very strong argument, the position which the court assumed, and in referring to the discretion given by the statute, follows this court as one of the appellate tribunals of the state, in a measure regarding our decision in the matter as controlling. *242 Whether having reached a different conclusion he would have held with us on this question is not clear. However it may be, my conviction on this subject as heretofore expressed is unaltered, and I do not believe that any arbitrary discretion is left to the board, but that when once a judgment is rendered, the county is bound to levy a tax in order to pay it. On this proposition the court has heretofore been a unit, and on a careful examination has announced the doctrine.
We now come in the natural order of the discussion to two decisions of the supreme court which must be analyzed, their force and effect determined and their scope and extent ascertained before I can proceed to announce my own conclusions. I grant if those decisions contain what it is contended on the part of the county they decide, we are concluded. If they do not, we are not concluded. My opinion is unchanged by anything which is contained in them. I will now proceed with the examination of those decisions. What I may say, is not to be taken in the broad sense of criticism, but rather in the more restricted one of an expression of my own convictions concerning the law. It is quite true there is not reserved to this court, nor to any member of it, the right to criticise or overrule the opinions of the supreme court as it is reserved to that distinguished tribunal to criticise and overrule ours, but I think at the end of my term it will not be harmful to general judicial harmony, nor be regarded as totally unwarranted, if I proceed somewhat to analyze these opinions, and see whether therefrom I can gather material sufficient to support what I shall hold. It is quite true the opinions were rendered by one whose professional and judicial equipment has not been surpassed by any who have adorned the supreme bench, and by one whose judgment and understanding have been quickened and invigorated by the practice of a profession which has done more as Burke says to that end than all others. Notwithstanding this, it would seem that the ultimate consequences and effect of the position assumed were not entirely anticipated in Forbes v. The County, 23 Colo. 344, wherein the supreme court decides, *243 if I understand, the decision at all, that a suit may not be begun on a county warrant. This was the force and effect of the decision, and yet it is not absolutely the result of it. The court’s conclusion is deduced from a consideration of what is believed to have been the policy adopted by the legislature with reference to the management of county finances, and is supported by a reference to the several statutory provisions regulating the presentation and allowance of claims, the issuance of warrants, their registration and ultimate payment. The decision necessarily overrules the Schloss case in the 1st Colo. Appeals, which the court not quite felicitously says was rendered on a mistaken conception of the law. This, of course, I concede, because ita lex scripta est. I may be pardoned however to support the decision by a little reference to some unrecorded history with which the present supreme court is not familiar, to the point that that case involved a good deal of discussion at the time of its rendition and this court was not a unit. The question was discussed with the supreme court, and that court as it was then constituted was in entire harmony with this in regard to the main question respecting the possibility to maintain a suit on a county warrant. We were therefore all mistaken in regard to what the law was. The court, however, disposes of the cases cited in support of the decision with a general statement that it will be found on examination that they were decided under statutory provisions very unlike ours. This I am not prepared to concede, and I regret the court did not demonstrate the proposition. This is an unimportant consideration, however, for the law in Colorado now is that you may not at pleasure maintain a suit upon a county warrant notwithstanding the county is indebted and has issued its promise to pay. If you could not bring suit upon a county warrant, it is a little difficult to understand how you could ever obtain a judgment against a county except in a certain excepted class of cases which will be referred to. You could not obtain judgment upon torts because counties are not liable. Board of County Commissioners of El Paso Co. v. Bish, 18 Colo. 474.
*244 You might possibly bring suit on the original indebtedness, and it may be urged that it was the intention of the legislature to provide for this class of cases. 1 do not quite so understand the legislation because the act of 1887 provides strictly, as will be seen by reference to section 2, that no action can be maintained in any court on any claim or demand against a county until it shall have been presented to the county for audit and allowance. Just why this should have been true unless the legislature believed the county could always be sued it is difficult to understand. I should have imagined but for some things contained in the Forbes decision that the act of 1887 and the act of 1891 with reference to the collection of judgments would only be applicable to judgments which might be rendered in suits brought on claims which had been rejected by the county, and if the court had broadly decided that no suit could be maintained on county warrants such would have been the logical and reasonable conclusion. Yet we find in the Forbes case: “ While it may be that under some circumstances an action may lie to recover a money judgment against a county upon orders or warrants of this character, yet the policy of the legislature, as evidenced by the various enactments prescribing the manner in which the finances of a county shall be administered, is manifestly against the maintenance of such a suit.” We thus have a decision which declares that you cannot maintain a suit upon a county warrant, and yet concedes that it may be done. I confess that I do not understand the force and effect of the decision, and I am quite unable to conceive of a case which will permit a suit to be maintained upon a county warrant unless it be where the county interposes no defense and permits judgment to go without a plea in abatement, either that the warrant has not been reached in its regular order after presentation, or that there is no money and has been none in the treasury since its registration properly applicable to its payment. This is entirely analogous, as I look at it, to the principle which has been frequently expressed with reference to the pleading of a discharge in bankruptcy or similar affirmative *245 defenses, with respect to which the supreme court of the United States decides that the discharge has no more effect to relieve the bankrupt of his debt, than would a receipt or a release, and that as to all these things the defendant who would avail himself of them is bound to suggest them to the court by a plea. Boynton v. Ball, 121 U. S. 457, 465. If this be true, then there are cases, and this is a case in which a suit may be begun on a county warrant. For the purposes of this case I shall assume that this is true because I can conceive of no other, and when the supreme court admits that there are cases in which suits may be begun on county warrants and maintained, notwithstanding the general policy of the law, I then must hold that we have at present a suit properly brought against the county, wherein judgment was properly rendered because the county failed to plead either in abatement or in bar matters which would abate the suit or defeat it. My first premise then under those decisions is, that this suit was properly brought, properly maintained and has resulted in a judgment which is unquestionable.
I next support the position which I take that this is a regular and proper judgment and one which maybe enforced because it has practically been so decided by the supreme court in the case of Rio Grande County v. Burpee, 24 Colo. 57. My position in regard to this opinion is entirely independent and over and above and beyond the general doctrine which we have heretofore expressed in this court and maintained by copious citations of decisions of the United States supreme court. This Burpee case was an application for mandamus to compel Rio Grande county to levy a tax to pay a judgment. A judgment was entered awarding the writ and therefrom an appeal was prosecuted to the supreme court and a motion was made to dismiss it on the ground that that court had no jurisdiction. Quite manifestly the parties did not desire to come to this tribunal which had already adjudged them liable. They therefore tried the other to see if they could not secure a different decision. The court proceeded to consider the question of jurisdiction and said that it was only determinable by a con *246 sideration of the right of the court to go behind the judgment The contention on the part of the appellants, was that the warrants sued on exceeded the constitutional limitation, and being in excess of it they were unenforcible, irregular and void, and that they had a right to go behind the judgment to ascertain this fact. The court in considering the question cited a large number of supreme court cases which I shall also cite because they really decide the one question which underlies this whole litigation. Wisconsin v. Pelican Ins. Co., 127 U. S. 265; Louisiana v. Mayor of New Orleans, 109 U. S. 285; Louisiana v. St. Martin's Parish, 111 U. S. 716; Franklin County v. German Savings Bank, 142 U. S. 93; Boynton v. Ball, 121 U. S. 457; United States v. New Orleans, 98 U. S. 381; Town of Lyons v. Cooledge, 89 Ill. 529; Davenport v. County of Dodge, 105 U. S. 237 ; Ralls County Court v. United States, 105 U. S. 733.
It is quite trhe that that court, as did I, cited a sentence from the Wisconsin case to the effect that you might go behind the judgment to ascertain whether the claim is one of such a nature that the court is authorized to enforce it, yet it could not be done for the purpose of determining the validity of the original cause of action. I do not think either was fortunate in the selection of that sentence as an illustration of the doctrine. What I gather from all these adjudications of the supreme court is, and I think there is no question about it, that wherever the applicant for mandamus by his plead'ings and by his prayer invites the court to look through the judgment to the cause of action on which the suit was brought, and to the legislative enactment which was the authority for the creation of the obligation in order to enforce what the plaintiff and pleader insists is a contractual right growing out of the enactment authorizing the issue of the security, or providing a remedy for its enforcement, you may look to the cause of action. In those cases you may look through the judgment and behind it to the cause of action to ascertain whether in reality there was authority to issue the security or the law gave a remedy.
*247 It is also true, and those cases decide this proposition, that wherever the applicant is compelled to go back to the act authorizing the security to he issued in order to get a remedy for its enforcement, the court may look at it, and determining that the enactment was not in force or contained no power, will refuse the writ. This is as I look at it, as far as the supreme court has ever gone. Yet that court directly decides that wherever a judgment is rendered on a contract the inquiry which may be instituted into the nature of the original cause of action does not authorize “a re-examination of the validity of the contract, or of the propriety of the judgment.” They have again and again decided that wherever a judgment is recovered, “ the validity of the bonds upon which they were rendered is not now open to question. Nor is the payment of the judgments restricted to any species of property or revenues, or subject to any conditions. The indebtedness is absolute. If there were any question originally as to a limitation of the means by which the bonds were to be paid, it is cut off from consideration now by the judgments. If a limitation existed, it should have been insisted upon when the suits on the bonds v^ere pending, and continued in the judgments.” This is the force and effect of all the decisions of the supreme court when you come to analyze them and ascertain the facts on which they were rendered and the circumstances to which they were applied. There are some expressions in the Burpee case which seem per contra this proposition, as for instance, “ hence the court will go behind the judgment to determine only what means were provided for the payment of the original claim in order to apply the same to the payment of the judgment.” Just why that expression was used it is quite impossible to imagine because it is totally unnecessary to the decision. The question before the court in the Burpee case was not as to the means of enforcement. The court was not then undertaking to determine whether or not that was a case in which the parties were entitled to the remedy of mandamus to enforce the levy of a tax to pay the judgment, and whether such levy was one of *248 the lawful methods provided for the collection of the obligation which the petitioner had a right to demand. That was not the question before the court. The question before the court was, whether on the theory that you could go behind the judgment, it had the right in mandamus to inquire whether or not the warrants on which the suit had been brought had been issued in excess of the constitutional limitation. The court was not questioning the right to the remedy in the sense in which we have been discussing.it. I therefore take it that this was but an expression used in illustration of the general doctrine. I must assume that if the question now under consideration had been before that court it would take precisely the same position that I take because it cites the cases which uphold the doctrine. Besides all this, if my contention be not true, the court would undoubtedly have gone behind the judgment and said you may not have a mandamus to collect those warrants because you have not alleged and because it does not appear, that the warrants have been reached in regular order of presentation, and there is no showing that there is money in the treasury properly applicable to their payment. The doctrine which I have attempted to express and emphasize is the proposition that you may in some cases when the stated conditions exist, go behind the judgment to ascertain whether or not it is an enforcible cause of action, and whether or not the parties are entitled to the remedy they seek.
The petitioner for mandamus here is not compelled to resort to the statute which authorizes the issue of county warrants and provides for their registration and payment in order to obtain a remedy and enforce a judgment. We do not find any provision in the statute regulating the issue and payment of county warrants which provides for their ultimate payment or collection, reduction to judgment and enforcement thereafter. We do find, however, that ever since 1861 there has been a legislative enactment providing a remedy for the enforcement of judgments against counties. This has been entirely independent of the statutes regulating the presenta *249 tion of claims against counties, their payment or their enforcement. This legislation has continued until in the later -act, to wit, the act of 1887, and in the act of 1891, we find the legislature passing a law which gives -a remedy to a judgment creditor. This is to compel the county commissioners to levy a tax which shall ultimately pay it. It is quite true under these enactments there is a limitation on that right. The legislature has seen fit to prescribe the amount of tax which shall be levied so that there can be no oppression, but there shall be enough levied from year to year to ultimately extinguish the debt. This remedy is provided by an independent statute, applies to anj' and all judgments which have been rendered against a county. I therefore take it to be true, wherever a party has obtained a judgment against a county either in invitum or by default, or after a plea in abatement or in bar which may be adjudged insufficient, the judgment concludes the county, and the plaintiff may maintain an application for mandamus to compel the county to levy a tax to pay his judgment.
There are many other considerations and arguments which might be adduced in support of the general position which I have assumed in the case. These arguments generally speaking are to be found in the other decisions of this court, and in the dissenting opinion of Judge Sanborn in the Stryker case. I find some warrant and basis for the decision in the cases from the supreme court which I have analyzed, and which I have been compelled to discuss because they have been so persistently thrust on the attention of the court as conclusive of the controversy. I have dealt as generally with them as I could in justice to myself, and I have done no more than I believe I am warranted to do as a judicial officer of the state, and I have said and written what I have in this opinion that I may leave behind me when my term expires in April a judicial expression of a very firm conviction on the subject under consideration. If I am wrong I have been unable to see the right. If I am right, I have done my best to uphold it, and if it shall ultimately become the law of the state, I believe it *250 will tend to the conservation of good government, the protection of the rights of creditors, and the enforcement of the legal and moral obligations of county governments.
I assent to so much of the main opinion written by my Brother Thomson, as holds that the proof respecting the time and the nature of the demand was not substantially altered on the subsequent hearing, and that in reality one of the prerequisites to the commencement of such proceedings, to wit, a sufficient demand, was not made prior to the time that these proceedings were instituted. It is gravely doubtful whether the form of the demand was sufficient; whether it was made at the proper place and on proper parties, and it is clear, as already suggested by Brother Thomson, that it followed rather than preceded the beginning of the proceedings. I should therefore have assented to the reversal of the case simply, but for my desire to put on record my convictions respecting the main proposition which are not in accord with those of my learned brethren. The majority of the court would not be opposed to my conclusions but for the fact that Brother Wilson conceives that his opinion is foreclosed by those decisions of the supreme court which I have attempted to analyze and explain. This makes no difference in the result, but it lends a little more support to my position and somewhat strengthens my conclusions.